# EXHIBIT J



April 18, 2023

David Lassner
Office of the President
University of Hawai'i at Mānoa
Bachman Hall 202
2444 Dole Street
Honolulu, Hawai'i 96822

<u>Sent via U.S. Mail and Electronic Mail (david@hawaii.edu)</u>

Dear President Lassner:

The Foundation for Individual Rights and Expression (FIRE), a nonpartisan nonprofit dedicated to defending freedom of speech,[1] is concerned by the University of Hawai'i at Mānoa and the William S. Richardson School of Law's (WSRSL) decision to investigate Professor Kenneth Lawson for remarks at a faculty meeting and ensuing emails. Given that the First Amendment protects Lawson's remarks even if they offended some recipients, UH Mānoa must stop any investigation into Lawson stemming from his speech and allow him to return to campus.

On February 17,[2] WSRSL Dean Camille Nelson led a faculty meeting where Lawson stated his view that WSRSL's programming for Martin Luther King, Jr. Day was racially insensitive because the Diversity and Inclusion Committee did not plan to include black people in its "Reflections on a *Letter from Birmingham Jail* lunch and discussion."[3] During his criticism, it is alleged that Lawson used profanities and gestured, striking his table. When another professor offered a rejoinder, he allegedly called her a "white liberal." He contrasted his history as a civil rights lawyer with Nelson's past as a woman of color born outside the U.S. The next day, Lawson emailed his views to Nelson and members of the D&I Committee, and he and the

---

[1] For more than 20 years, FIRE has defended individual rights on America's college campuses. You can learn more about our recently expanded mission and activities at thefire.org.

[2] The recitation here reflects our understanding of the facts. Please find enclosed an executed privacy waiver authorizing you to share any additional information about this matter.

[3] Letter from Michael Bruno, Provost, to Kenneth Lawson (Feb. 27, 2023). Letters and emails on file with the author.

510 Walnut Street, Suite 1250  Philadelphia, PA 19106
phone: 215-717-3473  Fax: 215-717-3440
thefire.org

WSRSL Chapter of the Black Law Students Association (BLSA) announced a boycott of the event over university listservs.[4]

In a February 21 email, faculty members objected to Lawson's behavior in the faculty meeting.[5] In his response, Lawson denied he called anyone names and stated that some of the objections constituted "Nice Racism," urging professors to "come at me . . . but don't lie."[6] On February 27, Lawson received a letter from Provost Michael Bruno announcing he was under investigation for violation of UH Executive Policies 1.202, *Nondiscrimination, Equal Opportunity, and Affirmative Action*, and 9.210, *Workplace Harassment*, and would be barred from campus for 30 days.[7] The allegations arise from what UH characterizes as Lawson's profane and mocking language and aggressive action in the faculty meeting, and his emailing assertedly "veiled threats."

The First Amendment binds public universities like UH Mānoa,[8] including its investigations and pursuit of disciplinary sanctions.[9] While Lawson's expressions may have offended some, the First Amendment requires "a legal, not moral, analysis."[10] The Supreme Court has repeatedly and clearly held that government actors may not restrict expression on grounds that others find it offensive,[11] because the First Amendment "protect[s] even hurtful speech on public issues to ensure that we do not stifle public debate."[12] The Court has held there is no First Amendment exception for "hateful" views,[13] and expressly reaffirmed this principle in

---

[4] Email from Lawson to Camille A. Nelson, Dean and Professor of Law (Feb. 18, 2023, 3:26 PM); email from Lawson to Law-Students, Law-Faculty, and Law-Staff Listservs (Feb. 21, 2023, 3:08 PM) [hereinafter Email to Listservs]. The event was canceled the same day. Letter from Dina Shek, Faculty Specialist (Feb. 21, 2023).

[5] Email from Mark Levin, Professor of Law to Charles Booth, Professor of Law (Feb. 24, 2023, 8:58 AM). Other concerns from professors are contained in the email chain preceding Levin's comments.

[6] Email from Lawson to Carole Petersen, Professor of Law (Feb. 21, 2023, 8:47 PM).

[7] Letter from Bruno to Lawson, *supra* note 3. This letter also barred Lawson from campus for 30 days. This ban was extended for 30 days on March 29. *See Workplace Non-Violence*, UNIV. OF HAWAI'I SYS. (Oct. 31, 2014), https://www.hawaii.edu/policy/index.php?action=viewPolicy&policySection=ep&policyChapter=9&policyNumber=210&menuView=open [https://perma.cc/7LKZ-VJER]; *Nondiscrimination, Equal Opportunity, and Affirmative Action Policy*, UNIV. OF HAWAI'I SYS. (Feb. 2023), https://www.hawaii.edu/policy/docs/temp/ep1.202.pdf [https://perma.cc/K5EC-NTH9].

[8] *Healy v. James*, 408 U.S. 169, 180 (1972) ("[T]he precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'").

[9] *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 667–68 (1973); *Mabey v. Reagan*, 527 F.3d 1036, 1049–50 (9th Cir. 1976).

[10] *Animal Legal Def. Fund v. Reynolds*, 353 F. Supp. 3d 812, 821 (S.D. Iowa 2019).

[11] *See, e.g., Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("[The] bedrock principle underlying" First Amendment protection is that government actors "may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"); *Cohen v. California*, 403 U.S. 15, 25 (1971) (a statute prohibiting the display of "offensive" messages, including plaintiff's "Fuck the Draft" jacket, was unconstitutional).

[12] *Snyder v. Phelps*, 562 U.S. 443, 448, 461 (2011).

[13] *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (striking down an ordinance that prohibited symbols that "arouse[] anger, alarm or resentment in others on the basis of race, color, . . . or gender").

refusing to allow limitations on speech viewed as demeaning "on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground."[14]

These principles apply with particular strength to universities such as UH, whose primary mission is "to provide environments in which faculty . . . can discover, *examine critically*, preserve and transmit knowledge, wisdom, and value[.]"[15] UH's use of its *Workplace Non-Violence* policy here weakens its primary mission and violates its duty to respect faculty First Amendment rights. Lawson's speech about the event was vigorous, argumentative, and may have been distinctly unpleasant—but it did not constitute actual violence and remains protected.[16]

Nor may punishment, and thus investigation, lie under any theory that Lawson engaged in any unprotected speech, as it does not meet the stringent tests for true threats or harassment, the only two of the "well-defined and narrowly limited classes of [unprotected] speech"[17] that UH could cite here.

A true threat is that by which a speaker "means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals."[18] Here, Lawson's speech manifests no such intent, and is instead like the hyperbolic rhetoric in *Fogel v. Collins*, where a court insisted on the need to examine "the entire context" and held it was "hard to see how any reasonable observer would have believed the statements were serious expressions of an intent to cause harm."[19] Lawson's emails to Nelson and the listservs provide the context of his original protest in the faculty meeting. Rather than demonstrate any intent to threaten his colleagues, he demonstrated that his point of view was different. He raised context of incidents in the community where he believed that the experience of Black individuals had been discounted or less considered. The context shows he lacked the intent to threaten his colleagues and was only encouraging them to think critically about his perception of the event.

Nor does Lawson's speech rise to a level of actionable harassment, which requires both (1) that the victim subjectively asses the conduct, in the totality of the circumstances, as harassment, and (2) the conduct is unwelcome, severe, and pervasive.[20] For the totality of the circumstances, courts have stated that harassment does not include mere "utterance of an

---

[14] *Matal v. Tam*, 582 U.S. 218, 246 (2017) (plurality opinion).

[15] *Mission and Purpose of the University*, Univ. of Hawai'i Sys. (Mar. 20, 2009), http://www.hawaii.edu/policy/index.php?action=viewPolicy&policySection=rp&policyChapter=4&policyNumber=201&menuView=open [https://perma.cc/B9PQ-QS4P] (emphasis added).

[16] *Rodriguez v. Maricopa Cnty. Comm. Coll. Dist.*, 605 F.3d 703, 708–09 (9th Cir. 2009) ("[T]he desire to maintain a sedate academic environment does not justify limitations on a [professor's] freedom to express himself in vigorous, argumentative, unmeasured, and even distinctly unpleasant terms.").

[17] *Chaplinsky v. New Hampshire*, 315 U.S. 568, 574 (1942).

[18] *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added).

[19] *Fogel v. Collins*, 531 F.3d 824, 832–33 (9th Cir. 2008).

[20] *Saxe v. State Coll. Area School Dist.*, 240 F.3d 200, 205 (3d Cir. 2001) (citation omitted); *Rodriguez*, 605 F.3d at 708 ("There is no categorical 'harassment exception' to the First Amendment's free speech clause.").

[]epithet" or "discourtesy or rudeness" that do not create an objective change in conditions of employment.[21] Lawson's comments were not objectively offensive because they represent criticism on an issue of current political and cultural debate,[22] nor were they pervasive because they were non-recurring isolated instances.[23]

The fact that UH is thus far investigating Lawson and has yet to punish him does not mean First Amendment harm has not occurred. Investigation of constitutionally-protected speech can itself violate the First Amendment, even if that investigation concludes in favor of the speaker.[24] The question is not whether formal punishment is meted out, but whether the institution's actions in response "would chill or silence a person of ordinary firmness from future First Amendment activities."[25] Barring Lawson from campus during an announced investigation certainly risks chilling his future speech, even if no punishment follows this time.

\* \* \* \*

The First Amendment protects Lawson's speech in the faculty meeting and his subsequent emails. That does not, however, shield a speaker from criticism for his expression. Criticism is a form of "more speech," the remedy to offensive expression that the First Amendment prefers to censorship.[26] However, the First Amendment limits the types of consequences that may be imposed, and who may impose them. And the investigation here would clearly chill an individual of ordinary firmness. Accordingly, we request a substantive response to this letter by close of business on May 2, 2023, confirming that UH Mānoa will suspend its inquiry and forgo disciplinary sanctions.

Sincerely,

*James P. Jordan*

James P. Jordan
Litigation Fellow, Campus Rights Advocacy

Cc:   Michael S. Bruno, Provost
      Camille A. Nelson, Dean of William S. Richardson School of Law and Professor of Law
      Jonathan Osorio, Dean of Hawai'iniākea School of Hawaiian Knowledge

Encl.

---

[21] *Saxe*, 240 F.3d at 205 (quoting, in part, *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

[22] Lawson's criticism of the event was adopted and supported by the WSRSL Chapter of the National BLSA. *See* Email to Listservs, *supra* note 4.

[23] *Mosavi v. Mt. San Antonio Coll.*, 805 F. App'x 502, 504 (9th Cir. 2020) ("[An] isolated incident would not constitute severe and pervasive harassment."). UH policy does not punish "isolated instances" unless they are "extremely severe." *Nondiscrimination, Equal Opportunity, and Affirmative Action, supra* note 11.

[24] *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

[25] *Id.*

[26] *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).