# EXHIBIT 4

UNIVERSITY
of HAWAI'I
SYSTEM

**Title**

Sex and Gender Based Misconduct Policy

**Header**

Executive Policy Chapter 1, General Provisions
Executive Policy EP 1.204 – Sex and Gender Based Misconduct Policy
Effective Date: February 1, 2023 (Supersedes EP 1.204 and Previously Abolished EP 1.203)
Prior Dates Amended: August 2020, January 2020; September 2015; February 2015; January 2006
Responsible Office: Office of the President
Governing Board of Regents Policy: 1.205
Review Date: August 2025

## I. Purpose

The University of Hawai'i (the "University") is committed to providing a workplace and educational environment, as well as other benefits, programs, and activities, that is free from discrimination on the basis of sex.

This policy establishes an impartial, integrated and consistent approach to preventing, reporting, and promptly responding to sex discrimination and gender-based violence across all campuses and centers at the University of Hawai'i. This policy also applies to sexual harassment under Title IX of the Education Amendments of 1972 as implemented and defined by the relevant sections of 34 C.F.R. §§ 106.30 and other related conduct as defined below.

Allegations of discrimination that are not defined as Prohibited Behavior under this policy will be processed under EP 1.202 Nondiscrimination, Equal Opportunity & Affirmative Action Policy.

## II. Definitions

### A. Adverse Treatment

*Adverse Treatment* means any significant change that negatively impacts one's status or access to employment or educational benefits and opportunities. Negative changes could include suspension, evaluations, grades, assignments, denial of program opportunities, termination, failing to promote, reassignment with significantly different responsibilities, a decision causing a significant change in benefits, direct or implied threats, coercion, harassment, intimidation, or encouragement of others to retaliate.

### B. Advisor

*Advisor* means an individual chosen by a party or appointed by the University, as applicable, to accompany the party to meetings related to the complaint process, to advise the party on that process, and/or to conduct cross-examination for the party at the live hearing, if any.

Page 1 of 19

C.   **Coercion**

*Coercion* is unreasonable pressure for sexual activity. Coercive conduct differs from seductive conduct based on factors such as the type and/or extent of the pressure used to obtain consent. When someone makes clear that they do not want to engage in certain sexual activity, that they want to stop, or that they do not want to go past a certain point of sexual interaction, continued pressure beyond that point may be coercive.

D.   **Complainant**

*Complainant* means an individual who is alleged to be the victim of conduct that could constitute Prohibited Behavior under this policy.

E.   **Complaints**

*Complaints* are allegations of Prohibited Behavior under this policy.

F.   **Confidential Resource**

*Confidential Resource* means an employee appointed by the University and who is not a Responsible Employee on notice of Prohibited Behavior. Confidential Resources can provide assistance related to issues of sex discrimination and gender-based violence in a confidential manner.

G.   **Consent**

*Consent* means knowing, voluntary, and clear permission by word or action to engage in sexual activity.

A person cannot give Consent if the person is under the age of consent for sexual activity, the person is developmentally or intellectually disabled, or the person is mentally incapacitated or physically helpless.

Lack of protest or resistance cannot be interpreted as Consent. Silence cannot be interpreted as Consent. Consent must be ongoing throughout any sexual activity and can be revoked at any time.

The existence of a dating relationship, domestic partnership or marriage between the persons involved, or the existence of past sexual relations between the persons involved, is never by itself an indicator of Consent.

H.   **Education Program or Activity**

*Education Program or Activity* means locations, events, or circumstances where the University exercises substantial control over both the Respondent and the context in which the Prohibited Behavior occurs and also includes any building owned or controlled by a student organization that is officially recognized by the University.

I.   **Force**

*Force* means the use of physical violence and/or physical imposition to gain sexual access. Force also includes threats, intimidation (implied threats), and coercion that is intended to overcome resistance or produce consent. Sexual

activity that is forced is, by definition, non-consensual, but non-consensual sexual activity is not necessarily forced. Silence or the absence of resistance alone is not consent. Consent is not demonstrated by the absence of resistance. While resistance is not required or necessary, it is a clear demonstration of non-consent.

J.   **Formal Title IX Sexual Harassment Complaint**

*Formal Title IX Sexual Harassment Complaint* means a document filed/signed by the Complainant or signed by the Title IX Coordinator alleging a Title IX Sexual Harassment policy violation as defined under Section III.A.1 by a Respondent and requesting that the University investigate the allegation(s). At the time of filing a formal complaint, the Complainant must be participating in or attempting to participate in the education program or activity of the University. As used in this paragraph, the phrase "document filed by a Complainant" means a document or electronic submission (such as by electronic mail or through an online portal provided for this purpose by the University) that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the formal complaint.

K.   **Formal Title IX Sexual Harassment Grievance Process**

*Formal Title IX Sexual Harassment Grievance Process* means a method of formal resolution outlined in Administrative Procedure 1.204 to address conduct that falls within Title IX Sexual Harassment, and which complies with the requirements of 34 CFR Part 106.45.

L.   **Incapacitation**

*Incapacitation* occurs when someone cannot make rational, reasonable decisions because they lack the capacity to give knowing/informed consent (e.g., to understand the "who, what, when, where, why, or how" of their sexual interaction). Incapacitation is determined through consideration of all relevant indicators of an individual's state and is not synonymous with intoxication, impairment, blackout, and/or being drunk. Incapacitation also covers a person whose incapacity results from a temporary or permanent physical or mental health condition, involuntary physical restraint, and/or the consumption of incapacitating drugs. A person cannot consent if they are unable to understand what is happening or are disoriented, helpless, asleep, or unconscious, for any reason, including by alcohol or other drugs. A Respondent violates this policy if they engage in sexual activity with someone who is incapable of giving consent.

M.   **Notice**

*Notice* means that an employee, student, or third-party informs the Title IX Coordinator or other Official with Authority of the alleged occurrence of Prohibited Behavior under this policy.

N.   **Official with Authority**

*Official with Authority* means an employee of the University explicitly vested with the responsibility to implement corrective actions for Prohibited Behavior under this policy on behalf of the University.

O.  **Parties or Party**

*Parties* mean the Complainant(s) and Respondent(s), collectively.

*Party* refers to either the Complainant or Respondent, individually.

P.  **Prohibited Behavior**

*Prohibited Behavior* means any behavior prohibited under Section III.A below.

Q.  **Respondent**

*Respondent* means an individual who has been reported to be the alleged perpetrator of conduct that could constitute Prohibited Behavior under this policy.

R.  **Responsible Employee**

*Responsible Employee* means an employee of the University who is obligated by state law or University policy to share knowledge, notice, and/or reports of harassment, discrimination, and/or retaliation with the Title IX Coordinator. All faculty members, except those who are designated as confidential advocates, are Responsible Employees under Hawai'i Revised Statutes §304A-120. For purposes of this policy, the term Responsible Employee is synonymous with the term Mandated reporter under 34 C.F.R. Part 106.

S.  **Supportive Measures**

*Supportive Measures* means non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Complaint or where no Complaint has been filed. Such measures are designed to restore or preserve equal access to the University's educational programs and/or activities without unreasonably burdening the other Party, including measures designed to protect the safety of all parties or the University's educational environment, or deter Prohibited Behavior.

T.  **Title IX Coordinator**

*Title IX Coordinator* is at least one official designated by the University to ensure compliance with Title IX and the University's Title IX program. References to the Coordinator throughout this policy may also encompass a designee of the Coordinator for specific tasks.

U.  **Title IX Sexual Harassment**

*Title IX Sexual Harassment* is the umbrella category including the offenses of Title IX sexual harassment, sexual assault, stalking, dating violence, and domestic violence as covered by Title IX of the Education Amendments of 1972, 34 C.F.R. §106.30, and further defined in Section III.A.1 below.

III.  **Executive Policy**

It is the policy of the University of Hawai'i to provide equity of opportunity in higher education, both in the educational mission and as an employer. The University is committed to complying with all State and Federal statutes, rules, and regulations which prohibit discrimination.

The University is committed to (1) providing an educational and working environment that is free from all forms of Prohibited Behavior under this policy; (2) eliminating, preventing, and addressing the effects of Prohibited Behavior; (3) fostering an environment where all individuals in our University community are well informed and supported when reporting alleged Prohibited Behavior to the University; and (4) providing a fair, equitable, and impartial process for all Parties.

### A.  Prohibited Behavior

The University prohibits the following conduct:

#### 1.  Title IX Sexual Harassment

Formal Title IX Sexual Harassment Complaints alleging Title IX Sexual Harassment are subject to the Formal Title IX Sexual Harassment Grievance Process outlined in Administrative Procedure (AP) 1.204 based on the Scope and Jurisdiction set forth under Section III.B.

Title IX Sexual Harassment is defined as conduct on the basis of sex that satisfies one or more of the following:

##### a.  Quid Pro Quo

Title IX Quid Pro Quo is when an employee of the University of Hawai'i conditions the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct.

##### b.  Unwelcome Conduct

Title IX Unwelcome Conduct means unwelcome conduct, determined by a reasonable person, to be so severe, and pervasive, and objectively offensive, that it effectively denies a person equal access to the University's education program or activity.

##### c.  Sexual Assault

Title IX Sexual Assault includes:

###### i.  Sex Offenses, Forcible

Sex Offenses, Forcible: Any sexual act directed against another person, without the consent of the Complainant, including instances in which the Complainant is incapable of giving consent.

###### ii.  Forcible Rape

Forcible Rape: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Complainant.

iii. **Forcible Sodomy**

Forcible Sodomy: Oral or anal sexual intercourse with another person, forcibly, and/or against that person's will (non-consensually); or not forcibly or against the person's will in instances in which the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

iv. **Sexual Assault with an Object**

Sexual Assault with an Object: The use of an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

v. **Forcible Fondling**

Forcible Fondling: The touching of the private body parts of another person (buttocks, groin, breasts), for the purpose of sexual gratification, forcibly, and/or against that person's will (non-consensually); or not forcibly or against the person's will in instances in which the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

vi. **Sex Offenses, Non-forcible:**

(1) **Incest:**

Incest: Non-forcible sexual intercourse, between persons who are related to each other, within the degrees wherein marriage is prohibited by Hawai'i law.

(2) **Statutory Rape:**

> Statutory Rape: Non-forcible sexual intercourse, with a person who is under the statutory age of consent of 16.[1]

d. **Dating Violence**

Dating Violence is violence committed by a person, who is in or has been in a social relationship of a romantic or intimate nature with the Complainant.

The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition:

   i. Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse.

   ii. Dating violence does not include acts covered under the definition of domestic violence.

e. **Domestic Violence**

Domestic Violence is violence committed by a current or former spouse or intimate partner of the Complainant, by a person with whom the Complainant shares a child in common, or by a person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner, or by a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Hawaiʻi, or by any other person against an adult or youth Complainant who is protected from that person's acts under the domestic or family violence laws of Hawaiʻi.

f. **Sex/Gender-Based Stalking**

Sex/Gender-Based Stalking is engaging in a course of conduct, on the basis of sex or gender (including actual or perceived sex, gender, sexual orientation, gender identity, or gender expression), directed at a specific person that would cause a reasonable person to fear for the person's safety, or the safety of others; or suffer substantial emotional distress. For the purposes of this definition:

   i. *Course of conduct* means two or more acts, including, but not limited to, acts in which the Respondent directly, indirectly, or through third parties, by any

---

[1] In Hawaiʻi, the age of consent is sixteen (16) generally, or the age of consent is between fourteen (14) and fifteen (15) when either the other person is less than five (5) years older or when the other person is legally married to the person between the ages of fourteen (14) and fifteen (15). See Haw. Rev. Stat. § 707-732.

Page **7** of **19**

        action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

    ii.    *Reasonable person* means a reasonable person under similar circumstances and with similar identities to the Complainant.

    iii.    *Substantial emotional distress* means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

## 2. Sex Discrimination

Sex Discrimination is any distinction, preference, or adverse treatment of an individual when based on a person's sex or gender (including actual or perceived sex, gender, sexual orientation, gender identity, or gender expression) that is sufficiently serious to unreasonably interfere with or limit:

    a.    A student's or admission applicant's ability to participate in, access, or benefit from educational programs, services, or activities (e.g. admission, academic standing, grades, assignment, campus housing);

    b.    An employee's or applicant's access to employment, consideration of, or conditions and benefits of employment (e.g. hiring, advancement, assignment);

    c.    An authorized volunteer's ability to participate in a volunteer activity; or

    d.    A guest's or visitor's ability to participate in, access, or benefit from the University's programs.

## 3. Sexual Harassment

Sexual Harassment is unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct that is sexual in nature when:

    a.    Submission to or rejection of the conduct is either an explicit or implicit term or condition of an individual's employment, education, or participation in a University program, activity, or service;

    b.    Submission to or rejection of the conduct by an individual is used as a basis in decisions affecting that individual's employment, education, or participation in a University program, activity, or service; and/or

    c.    When such conduct is unwelcome to the person to whom it is directed or to others directly aware of it, and when such conduct is:

   i. Severe, persistent, or pervasive; and

   ii. Has the purpose or effect of either:

    (1) Unreasonably interfering with the student's academic performance or the employee's work performance, or

    (2) Creating an intimidating, hostile, or offensive work or educational environment.

The conduct must be both objectively and subjectively perceived as offensive. That is, the Complainant must view the conduct as offensive, and a reasonable person must also view the conduct as offensive. "Reasonable person" means a reasonable person under similar circumstances and with similar identities to the reporting party (e.g., age, sex, race, religion).

Petty slights, annoyances, and isolated incidents (unless sufficiently serious) will typically not rise to the level of Sexual Harassment.

**4. Sex/Gender-Based Harassment**

Sex/Gender-Based Harassment is unwelcome conduct based on a person's sex or gender (including actual or perceived sex, gender, sexual orientation, gender identity, or gender expression) when:

 a. Submission to or rejection of the conduct is either an explicit or implicit term or condition of an individual's employment, education, or participation in a University program, activity, or service;

 b. Submission to or rejection of the conduct by an individual is used as a basis in decisions affecting that individual's employment, education, or participation in a University program, activity, or service; and/or

 c. When such conduct is unwelcome to the person to whom it is directed or to others directly aware of it, and when such conduct is:

   i. Severe, persistent, or pervasive; and

   ii. Has the purpose or effect of either:

    (1) Unreasonably interfering with the student's academic performance or the employee's work performance, or

    (2) Creating an intimidating, hostile, or offensive work or educational environment.

The conduct must be both objectively and subjectively perceived as offensive. That is, the Complainant must view the conduct as offensive, and a reasonable person must also view the conduct as offensive.

"Reasonable person" means a reasonable person under similar circumstances and with similar identities to the reporting party (e.g., age, sex, race, religion).

Petty slights, annoyances, and isolated incidents (unless sufficiently serious) will typically not rise to the level of Sex/Gender-Based Harassment.

### 5. Sexual Exploitation

Sexual Exploitation is violating the sexual privacy of another, or taking unjust or abusive sexual advantage of another, without Consent, and when such behavior does not otherwise constitute Sexual Assault.

Sexual Exploitation includes but is not limited to:

- Photographing or taping someone involved in sexual activity, sexual intercourse/penetration, or in a state of undress, without their knowledge or Consent
- Sharing photographs or video/audio of someone involved in sexual activity, intercourse/penetration, or in a state of undress, without their knowledge or Consent
- Watching someone currently involved in sexual activity without their knowledge or Consent
- Allowing others to watch sexual activity without knowledge or Consent from all parties involved
- Exposing one's intimate parts, such as genitalia, groin, breast and/or buttocks to someone without their Consent.
- Engaging in sexual activity in public and being witnessed by a non-consenting person
- Tampering with a drink, intending to impair a person's ability to withhold Consent or knowingly Consent to sexual activity, regardless of whether sexual activity actually takes place

### 6. Stalking

Stalking is engaging in a course of conduct, directed at a specific person that would cause a reasonable person to fear for the person's safety, or the safety of others; or suffer substantial emotional distress. For the purposes of this definition:

   a. *Course of conduct* means two or more acts, including, but not limited to, acts in which the Respondent directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

      b.    *Reasonable person* means a reasonable person under similar circumstances and with similar identities to the Complainant.

      c.    *Substantial emotional distress* means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

### 7. Retaliation

The University prohibits and will not tolerate retaliation. Retaliation includes intimidation, threats, coercion, or discrimination against any individual for the purpose of interfering with any right or privilege secured by law or this policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation or proceeding under this policy and its accompanying procedures, AP 1.202 & AP 1.204. Acts of alleged retaliation should be reported immediately for appropriate action.

A retaliation complaint, allegation, or report may be reviewed as a separate offense; that is, a person can be found responsible for retaliation even if not found to be responsible for the underlying reported harassment or discrimination.

Charging an individual with a conduct violation for making a materially false statement in bad faith in the course of a complaint process under this policy and its accompanying procedure does not constitute retaliation provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party has made a materially false statement in bad faith.

Allegations of retaliation will generally be processed in accordance with AP 1.202; however, depending upon the circumstances, including the timing of the allegations, the University may combine allegations of retaliation with a complaint of harassment or discrimination and process the combined allegations.

### 8. Violating the Terms of a Supportive Measure

Violations of the terms of Supportive Measures may be considered a separate conduct violation and may be referred to the appropriate student or employee conduct processes for enforcement, investigation, and possible sanction or the Title IX Coordinator may combine allegations of violations of the terms of Supportive Measures with complaints under this policy.

### 9. Failure to Comply with Sanctions, Remedies and/or Corrective Actions

Case 1:23-cv-00348-LEK-RT   Document 20-6   Filed 09/06/23   Page 13 of 20   PageID.355

EP 1.204
February 2023

All Respondents are expected to comply with the assigned sanctions, remedies, and/or corrective actions within the timeframe specified by the final Decision Maker(s), including the Appeal Officer.

Failure to abide by the corrective action(s) or sanction(s) imposed by the date specified, whether by refusal, neglect, or any other reason, may be reviewed as a separate offense and/or result in additional sanction(s), including suspension, expulsion, and/or termination from the University, and may be noted on a student's official transcript.

10. **False Allegations and Evidence**

Deliberately false and/or malicious accusations, providing false evidence, tampering with or destroying evidence, or deliberately misleading an official conducting an investigation may subject a person to discipline.

B. **Scope and Jurisdiction**

This policy applies to all University students, employees, and third parties.

1. **AP 1.204 for Title IX Sexual Harassment**

The use of AP 1.204 as the applicable procedure shall occur when all of the following conditions are met:

   a. The allegations include Title IX Sexual Harassment;

   b. The Respondent is a student (including a student-employee), employee, or third party affiliated with the University at the time of the alleged Prohibited Behavior;

   c. The allegations occurred against a person in the United States; and

   d. The Complainant was participating in, or attempting to participate in, an Education Program or Activity at the University at the time of the alleged Prohibited Behavior.

Where the same underlying facts simultaneously relate to allegations that meet all conditions under this section and allegations that are outside of the scope of Title IX Sexual Harassment, the Title IX Coordinator shall have the discretion to join allegations to the Title IX Sexual Harassment matter and resulting AP 1.204 process.

2. **All Other Prohibited Behavior Under This Policy**

If any of the conditions under Section III.B.1 are not met, the use of AP 1.202 as the applicable procedure shall occur when the alleged Prohibited Behavior occurs:

   a. On University property; or

   b. Outside of University property if:

      i.      the conduct was in connection with a University-sponsored program or activity; or

      ii.     the conduct may have a continuing adverse effect or could create a hostile environment on campus.

In circumstances involving third parties or conduct that occurred outside of a University-sponsored program or activity, the University will decide whether this Policy applies to a reported incident or complaint on a case-by-case basis. The Title IX Coordinator will document the rationale for applying or declining to apply this Policy.

Any use of the University's computing and network resources from campus property or a remote location, including but not limited to accessing email accounts, will be deemed to have occurred within the scope of this policy.

### 3. Third Parties

If the Respondent is unknown or is not a member of the University community, the Title IX Coordinator will assist the Complainant in identifying appropriate campus and local resources and support options and/or, when criminal conduct is alleged, in contacting local or campus law enforcement if the individual would like to file a police report.

Further, even when the Respondent is not a member of the University's community, Supportive Measures, remedies, and resources may be accessible to the Complainant by contacting the Title IX Coordinator or confidential resource.

## C. Standard of Review – Preponderance of the Evidence

In determining whether alleged behavior violates this Policy, the University will consider the totality of the facts and circumstances involved in the incident, including the nature of the alleged behavior and the context in which it occurred, and determine whether it is more likely than not that the alleged Prohibited Behavior occurred.

## D. Institutional Roles and Resources

### 1. Confidential Resources

If a Complainant would like the details of an incident to be kept confidential, the Complainant may speak with on-campus licensed professional counselors and their staff, on-campus health service providers and their staff, and on-campus advocates. These individuals will maintain confidentiality when acting under the scope of their licensure, professional ethics, and/or professional credentials, except in extreme cases of immediate threat or danger or abuse of a minor, or when required to disclose by law or court order. Going to a Confidential Resource will not put the University on notice of a specific allegation under this policy. Campus mental health counselors and campus advocates are available to help free of charge and may be consulted during normal business hours.

2. **Responsible Employees**

All employees of the University who are considered Responsible Employees under State law (faculty members), University Managerial and Executive employees, the University of Hawaiʻi Office of Equity Assurance, the University of Hawaiʻi Community College System Office of Compliance & Title IX, campus security/ public safety departments, and Human Resources Offices are responsible employees and must promptly share with the Title IX Coordinator all known details of a report made to them in the course of their employment, within three (3) calendar days of receiving the report.[2]

Responsible Employees must promptly share <u>all</u> details of behaviors under this policy that they observe or have knowledge of, even if not reported to them by a Complainant or third-party.

3. **All Other University Employees**

All employees of the University (who are not designated as Confidential Resources) are encouraged to report alleged Prohibited Behavior to a Title IX Coordinator.

4. **Office of Equity Assurance**[3]

The Office of Equity Assurance (OEA) is responsible for overseeing a centralized program for preventing, reporting, and responding to sex-based discrimination and gender-based violence across all campuses and centers at the University of Hawaiʻi.

OEA coordinates regularly with all campus Title IX coordinators to support compliance with this policy and identify situations or allegations that impact multiple campuses. It shall also serve as the technical expert on Title IX and VAWA to support the campuses' Title IX programs and compliance initiatives.

OEA monitors and supports the responses by campuses to reports of alleged prohibited behavior; develops the training content for this policy and its accompanying procedure; and conducts formal investigations on alleged Prohibited Behavior, when other resources are not available.

OEA is <u>not</u> a Confidential Resource. All employees in OEA are responsible employees.

---

[2] Generally, disclosures in climate surveys, classroom writing assignments or discussions, human subjects research, or at events such as marches or speak-outs do not provide notice that must be reported to the Coordinator by employees, unless the Complainant clearly indicates that they desire a report to be made or seek a specific response from the University. Supportive measures may be offered as the result of such disclosures without formal action.

[3] Office name may be subject to change.

5. **Community College System Office of Compliance & Title IX ("CC System Compliance Office")**

The CC System Compliance Office provides direct support and assistance to the Title IX Coordinators and their teams at the seven University community colleges. OEA and the CC System Compliance Office shall confer regularly to ensure a centralized approach across all campuses.

The CC System Compliance Office is <u>not</u> a Confidential Resource. All employees in the CC System Compliance Office are responsible employees.

6. **Title IX Coordinator**

Each campus shall have a designated Title IX Coordinator who acts with independence and authority. The responsibilities of the Title IX Coordinator include, but are not limited to promptly responding to all reports, allegations and/or formal complaints of Prohibited Behavior under this policy; serving as the primary point of contact with all students, educating and informing them of their rights under this policy and any support services and programs; coordinating and implementing any supportive measures imposed under this policy; managing the grievance process for formal complaints of alleged Prohibited Behavior; serving as the primary and central repository for all reports, allegations and/or formal complaints of violations of this policy on their campus; collecting, monitoring, and evaluating data and/or indicators of reports or instances of Prohibited Behavior under this policy for purposes of identifying and addressing any patterns or systemic problems; providing data and/or indicators of reports or instances of Prohibited Behavior under this policy to the OEA; providing information regarding on and off campus support services and programs; ensuring prevention and awareness programs are conducted in an effective and responsible manner; serving as the primary liaison between their campus and community resources; and maintaining an updated list of all Confidential Resources on their respective campus. The Title IX Coordinator may designate Deputy Title IX Coordinators to assist with their responsibilities, with notice to the President or Chancellor and OEA.

Title IX Coordinators and their Deputies are Officials with Authority under this policy.

E. **Timely Reporting and Reporting Prohibited Behavior**

1. **Timely Reporting**

To ensure that the University is able to gather evidence sufficient to reach a determination and to respond promptly and appropriately to sexual harassment, formal complaints must be filed with the Title IX Coordinator within three (3) years of the most recent incident of alleged sexual harassment, unless it can be demonstrated that there is good cause for a later filing. The Title IX Coordinator will determine if good cause exists.

Page 15 of 19

### 2. Reporting Prohibited Behavior

Allegations of Prohibited Behavior may be reported to the campus Title IX Coordinator. Reports can be made in person, or by mail, telephone, or electronic mail, at any time, using the contact information listed for the Title IX Coordinator or by any other means that result in the Title IX Coordinator receiving the person's verbal or written report.

Upon receiving a report of Prohibited Behavior, the campus Title IX Coordinator shall assess the information and take the following actions:

   a. The Title IX Coordinator will determine any appropriate applicable supportive measures to provide to the parties.

   b. If the Title IX Coordinator or designee determines that the allegations, even if substantiated, would not rise to the level of a violation under this policy or are outside the scope or jurisdiction afforded under this policy, the Title IX Coordinator or designee will document the reason(s) that the matter will not be pursued under this policy including whether the matter will be referred to another office and/or pursued under another policy, and advise the Complainant accordingly.

   c. The Title IX Coordinator will explain the options available to the complainant including supportive measures, filing a Formal Title IX Sexual Harassment Complaint, as well as the option for informal resolution once the Formal Title IX Sexual Harassment Complaint has been filed.

   d. If a complaint warrants investigation, the Title IX Coordinator will ensure that the complaint is processed using the appropriate procedure.

### F. Multiple Campuses

When a report may impact multiple University campuses, the Title IX Coordinator who receives the report will inform all other Title IX Coordinators whose campuses may be impacted and the Office of Equity Assurance. The Title IX Coordinators of the impacted campuses will work cooperatively to ensure that appropriate supportive measures are provided to the parties. The Title IX Coordinator from the home campus of the Respondent will be designated as the lead Title IX Coordinator to manage the grievance process if a Complaint is filed; however, based upon the circumstances, a different lead Title IX Coordinator may be assigned and charged with managing the grievance process.

### G. Confidentiality Limitations

While the University recognizes the importance of confidentiality in these matters, only Confidential Resources can maintain confidentiality. The University will make every effort to preserve the privacy of all parties to the extent practicable, however, once the University has notice of alleged Prohibited Behavior, the

University must balance requests for confidentiality against its obligation to take timely and appropriate action.

### H. Legal Options Outside of the University

The University reporting process is separate and distinct from the criminal reporting process. Reports made to the University regarding Prohibited Behavior will not necessarily trigger a report to law enforcement. Should an individual wish to report allegations to law enforcement or initiate civil proceedings, they may do so at any time, and the University will not interfere with any such processes.

### I. Supportive Measures

The University may offer and implement appropriate and reasonable supportive measures, if available, to the Parties upon receiving a report of alleged Prohibited Behavior. Supportive Measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Complaint or where no Complaint has been filed.

Supportive measures are designed to restore or preserve equal access to University-sponsored education programs or activities without unreasonably burdening the other Party, including measures designed to protect the safety of all Parties or the University's educational environment.

The determination of appropriate Supportive Measures in a given situation must be based on the facts and circumstances of that situation. They are not intended to be permanent resolutions and may be amended or withdrawn as additional information is gathered.

Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

### J. Emergency Removal

The University may remove a Respondent entirely or partially from its education program or activities on an emergency basis if an individualized safety and risk analysis is made, a determination is made that an immediate threat to the physical health or safety of any student or other individual arising from allegations of Prohibited Behavior under this policy, justifies removal, and notice is provided to the Respondent and they are given an opportunity to challenge the decision immediately following the removal. The University will implement the least restrictive emergency actions possible in light of the circumstances and safety concerns.

Where an emergency removal is imposed, the Respondent will be given an opportunity to meet with the Title IX Coordinator, and any other appropriate official, within twenty-four (24) hours of receiving notice of the emergency removal to explain why the action/removal should not be implemented or should

Page 17 of 19

be modified. A Respondent may be accompanied by an Advisor of their choice to the meeting.

### K.  Recordkeeping

The University will maintain for a period of at least seven (7) years records of:

1. Each Title IX Sexual Harassment investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript required under federal regulation, any disciplinary sanctions imposed on the Respondent, any remedies provided to the Complainant designed to restore or preserve equal access to the University's education program or activity, and any appeal and the result therefrom;

2. Any Informal Resolution and the result therefrom;

3. All materials used to train Title IX Coordinators, Investigators, Decision-makers, and any person who facilitates an Informal Resolution process. The most current training materials will be made publicly available on the University's website; and

4. Any actions, including any supportive measures, taken in response to a report or formal complaint of Title IX Sexual Harassment, including the basis for all conclusions that the response was not deliberately indifferent; any measures designed to restore or preserve equal access to the University's education program or activity; and if no supportive measures were provided to the Complainant, document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

The University will also maintain any and all records in accordance with state and federal laws.

## IV.  Resource Links

The following resources are organized by category:

A.  **University Title IX Coordinators Contact Information**
http://www.hawaii.edu/titleix/coordinators

B.  **University Confidential Resources Contact Information**
http://www.hawaii.edu/titleix/confidential

C.  **Community Resources Contact Information**
http://www.hawaii.edu/titleix/community

D.  **Overview of University and Community Resources**
http://www.hawaii.edu/titleix/overview

## V.  Contact Information

For questions or concerns regarding this policy, please contact the Office of Equity Assurance at (808) 956-8629 or institutional.equity@hawaii.edu.

VI. **References**

    A. **Relevant Federal and State Laws and Regulations**

It is the policy of the University of Hawaiʻi to comply with the applicable federal and state statutes, rules, regulations,, and provisions in the collective bargaining agreements which prohibit discrimination in University programs, activities, and employment practices.

These equal opportunity laws include but are not limited to the following: Title VII of the Civil Rights Act of 1964, Pregnancy Discrimination Act of 1978, Title IX of the Education Amendments of 1972, Clery Act of 1990 as amended by the Violence Against Women Act (reauthorized in 2013), Equal Pay Act of 1963, Chapter 378 of the Hawaiʻi Revised Statutes, and Executive Order 11246.

    B. **AP 1.204 – Interim Title IX Sexual Harassment Grievance Process**

    C. **EP 1.202 – Nondiscrimination, Equal Opportunity, and Affirmative Action**

    D. **EP 7.205 – Systemwide Student Disciplinary Sanctions**

    E. **EP 7.208 – Systemwide Student Conduct Code**

    F. **EP 9.210 – Workplace Non-Violence**

    G. **AP 9.920 – Discrimination Complaint Procedures for Employees, Students, and Applicants for Employment or Admission**