# EXHIBIT 19

February 10, 2023

VIA EMAIL DELIVERY
Mbruno2@hawaii.edu

Michael Bruno, Provost
University of Hawaiʻi, Mānoa
2500 Campus Road
Hawaiʻi Hall 209
Honolulu, HI 96822

Re: *Formal Grievance For Violations of 2021-2025 UHPA/BOR Contract*

Dear Provost Bruno:

In accordance with the 2012-2025 UHPA/BOR Contract, I hereby respectfully submit this formal Grievance because I believe UH and the Law School have violated my rights under Article II, Sections A & B; Reference Section 17 Memorandum of Understanding For Procedures of Special Salary Adjustments and Bonus Payments, Sections A-E. The following exhibits support this Grievance.

A. Completed SSA Forms with faculty vote to support raise and UH denial.
B. Confidential Settlement Agreement
C. My SSA Request, Cover Letter, CV, Faculty Teaching Salary Chart
D. Law Dean Nelson's Action Memo; Exhibit E.
E. Emails between Lyons and Bruno denying SSA.
F. Faculty comments on SSA.

My recently denied Special Salary Adjustment (SSA) request is attached as Exhibit A. I based this SSA request solely on equity, merit, and market considerations. For example, my current salary is substantially lower than the salaries of every other Law School faculty member whose job responsibilities are comparable to mine (which violates the fundamental principle of equal pay for equal work). Moreover, I have never received a merit-based increase despite (1) consistently teaching more courses each year than any other Law School professor, (2) consistently attracting far more students than any other Law School professor, (3) consistently receiving far higher student evaluations than any other Law School professor, (4) receiving UH's highest award for classroom teaching, and (5) raising $1.5 million and reshaping a previously fledgling program into an objectively successful, widely supported, nationally recognized live-client clinic envied by other Law Schools (which suggests UH has yet to apply merit or market consideration when setting my compensation).

During my settlement negotiations for my Grievance on my misclassification, I tried to get UH to take equity, merit, and market considerations into account in determining my compensation. However, during those discussions, UH and UHPA representatives repeatedly insisted that the Arbitrator of my Grievance lacked the

jurisdiction and authority even to consider, much less apply, any of those factors unless and until I submitted a formal SSA request and a majority of the J Faculty voted to support or deny that request.

Last year, the terms of a confidential settlement agreement increased my base pay to $146,448. All parties to that agreement understood that this amount did not reflect any equity, merit, or market adjustments. All these parties understood that the pay raise was solely attributable to the Law School having improperly failed on two occasions to properly increase my pay: in 2015, when I was tasked with the job responsibilities of a departing J Faculty member, and in 2016 when the Law School rehired me at the culmination of a national search to fill an expanded and even more demanding position.

I cannot overstress that all parties to the settlement agreement were on the same page regarding the rationale underlying my new base compensation. Specifically, it was not based in any way on equity, merit, or market considerations. To guard against fading memories that might later preclude me from successfully pursuing an SSA, I asked that the settlement agreement spell out that equity, merit, and market had not been considered in setting my base pay. Here is the relevant section:

> (a) On July 1, 2022, Employee's base pay will be ONE HUNDRED FORTY SIX THOUSAND FOUR HUNDRED FORTY EIGHT DOLLARS ($146,448.00). **This increase to Employee's base pay is not due to the Special Salary Adjustment categories of Equity, Merit, or Market and is not subject to the special salary adjustment procedure.** Any collective bargaining salary increases effective on July 1, 2022, will be applied to this base pay. (Bold emphasis added). See Settlement Agreement Exhibit B.

Shortly after the above-described settlement had been finalized, I submitted an SSA request with supporting materials (Cover Letter, CV, Faculty Teaching Salary Chart all attached in a PDF marked as Exhibit C), meticulously followed the SSA process, and eventually received majority support from J Faculty, all of whom were fully aware of my post-settlement salary and my S Faculty classification.

In the history of the Law School, no faculty-supported request for an equity pay raise has ever been denied. Nonetheless, Law School Dean Camille Nelson and your office rejected my SSA request. See Exhibit D Nelson Action Memo; Exhibit E. Emails between Lyons and Bruno denying SSA.

I cannot read minds, but Dean Nelson appears to view my S Faculty classification as reason enough to reject any equal-pay-for-equal-work argument, and selected aspects of my background as reason enough to reject my merit and market arguments. She has pointed out that I cannot personally practice law (because of my disbarment), perhaps implying this necessarily limits my effectiveness as co-director of a live-client clinical program. She does not add that I personally recruited as my co-director one of the state's most skilled and respected lawyers, who is serving at no cost to the Law School. She also

does not mention my decades of relevant experience building and running a successful mid-sized law firm, personally arguing hundreds of major criminal cases, and regularly serving as an expert commentator for major national networks.

Dean Nelson has stressed that the nature of my scholarly activities is not like that of most faculty members. Interestingly, the same could be said about the nature of my classroom teaching, community service, and live-client clinic administration. Quite frankly, most academic scholarship is read, if at all, only by other academics. Try asking any judge or practitioner when they last read an academic law review and see what they say. Traditional scholarship has its place, but so do scholarly activities like mine, that address cutting-edge issues of interest to practicing lawyers, judges, and legislators. Because they are major elements of my intended audience, I also see value in utilizing media not yet embraced by some legal academics.

Dean Nelson's focus on my status as S Faculty is particularly troubling. From my standpoint, it is as if my actual job responsibilities and actual accomplishments are necessarily trumped by my classification. As a Black man, recovering addict, disbarred lawyer, and ex-convict, I occasionally encounter status-based discrimination—such as when someone treats me like a generalized member of a class rather than an individual who has done his best over the past 15 years to demonstrate an exceptionally strong work ethic, cutting-edge professional skills, and uncompromising personal integrity.

Please do not misunderstand. I am not questioning anyone's motivation. If legally actionable discrimination is at play here, I believe it is subconscious. Even so, I have concluded that the Law School's denial of my SSA request is discriminatory and unlawful. Under the settlement agreement, mediation took place before my filing this Grievance. The mediation ended unsuccessfully today, February 10, 2023. Accordingly, I am filing this Grievance.

Money is not my primary motivation for filing this Grievance. Instead, it is a combination of personal respect and institutional justice. If this Grievance cannot be resolved amicably in a way that addresses those aspects, I will have no viable option other than to seek legal relief in the court and seek changes in the law via the state legislature. This arbitrary and discriminatory system cannot stand.

Respectfully,

*Kenneth Lawson*
Kenneth L. Lawson

c: President Lassner
James Kardash UHPA
Wade Zukeran UHPA
Camille Nelson

3