# EXHIBIT 25



Office of the Vice President for Legal Affairs and
University General Counsel

July 21, 2023

<u>**VIA E-MAIL (wharrison@hamlaw.net)**</u>

William A. Harrison, Esq.
Harrison & Matsuoka
1001 Bishop Street, Suite 1180
Honolulu, HI 96813

Dear Mr. Harrison:

This responds to your July 10, 2023 letter to Provost Michael Bruno and Dean Jon Osorio as well as your July 17, 2023 letter to me and our subsequent telephone discussion. As a preliminary matter and as I noted in our call, this matter has been referred to our office and assigned to me, so **I deeply** appreciate you not contacting any of my clients directly.

In addition, with respect to Dean Nelson, as I noted in our conversation, in the letter notifying Mr. Lawson about the investigation dated February 27, 2023, attached hereto, he was also advised that he was not to have any contact with Dean Nelson and that it included "all forms of communication, including: in person, by telephone, e-mail or text message; contact or reference on social media or other electronic means of communication; and <u>contact through a third party, such as a friend, family member, co-worker, classmate, faculty, staff, or other.</u>" To the extent that Mr. Lawson asked you to copy Dean Nelson on communications with the University, please note that such actions could violate the no-contact order and could subject Mr. Lawson to discipline. In the future, please refrain from copying Dean Nelson on your communications. I also note that the Provost's letter directed Mr. Lawson to work with Dean Mirkay for "any matters that would normally require Dean's review, approval or consultation." Mr. Lawson should continue to address any work-related concerns through and with Dean Mirkay. The most recent email by your client to Dean Provost threatening that "[m]y lawyers are planning to file suit this morning because we did not hear back from UH counsel last night" is also inappropriate and again, should be directed to our office.

## Work from Home

To address the substance of the issues you raise, we wanted to make sure you (and FIRE as you and Mr. Lawson deem appropriate) have actually seen the February 27 letter. Contrary to your statements, Mr. Lawson has not been banned or banished from campus. In light of the stated concerns raised regarding Mr. Lawson's alleged behavior

2444 Dole Street, Bachman Hall 110
Honolulu, Hawai'i 96822
Telephone: (808) 956-2211
Fax: (808) 956-2109
An Equal Opportunity/Affirmative Action Institution

William A. Harrison, Esq.
July 21, 2023
Page 2

during the February 17, 2023 faculty meeting and the subsequent investigation into the allegations against Mr. Lawson, Provost Bruno reassigned Mr. Lawson to work from home in accordance with Article XVIII, B.6 of the Unit 7 Collective Bargaining Agreement between the University of Hawai'i Professional Assembly and the Board of Regents of the University of Hawai'i (July 1, 2021 to June 30, 2025). Article XVIII, B.6 which provides in pertinent part:

> However, the Chancellor or Provost may temporarily reassign the Faculty Member, or place the Faculty Member on administrative leave with pay, if the Chancellor or Provost believes that the Faculty Member's continuance may disrupt the operations of the University.
>
> The Chancellor or the Provost, or designee, shall not reassign or place of Faculty Member on administration leave on the grounds of disruption of operations for more than thirty (30) days without either written consent of the Union, or having delivered a statement in writing of the grounds therefore to the Faculty Member and the Union.

In the February 27 letter, Mr. Lawson was told that he was not to go to the WSRSL facilities during the reassignment period, but was otherwise able to "access the campus' public facilities." Additionally, arrangements were made to reassign his parking from Zone 17 to Zone 13 so that he could still access other parts of campus. However, I understand that Mr. Lawson never took the necessary steps to secure his Zone 13 parking pass.

As you know, it has been alleged that Mr. Lawson's conduct during the February 17, 2023 faculty meeting may have violated the University's Workplace Non-Violence Policy Executive Policy (EP) 9.210, the Nondiscrimination, Equal Opportunity and Affirmative Action Policy EP 1.202, and the Sex and Gender Based Misconduct Policy EP 1.204. These are allegations that the University takes very seriously. It is not unusual for the University to either reassign an employee away from their unit or place them on leave with or without pay during the pendency of an investigation, particularly if it is alleged that the employee's behavior includes swearing and yelling at as well as threatening other employees. Initially, in light of the circumstances and specific complaints made by his peers at WSRSL, it was determined that Mr. Lawson's presence was disruptive to the WSRSL's operations and he was reassigned to work from home for 30 days. Thereafter, the reassignment has been reevaluated to determine whether it is still appropriate and in accordance with the Unit 7 collective bargaining agreement. For each extension, it was determined that as the investigation is on-going and the circumstances have not changed, the reassignment to work from home would continue.

William A. Harrison, Esq.
July 21, 2023
Page 3

### Access to Files

The February 27 letter specifically stated that **"If there are items that you need from your office, please contact Associate Dean Nicholas Mirkay to make arrangements to pick up such items."** I understand that although Dean Mirkay has had multiple conversations with Mr. Lawson since the reassignment began, **Mr. Lawson has never asked Dean Mirkay for assistance in accessing items -- such as files for the Hawai'i Innocence Project (HIP) and the Beyond Guilt legal clinics – from his WSRSL office**.

### WSRSL HIP and Beyond Guilt Clinics

With respect to your assertions that the HIP and Beyond Guilt clinics will function to the detriment of the clinic's clients unless Mr. Lawson is permitted to work from his office at WSRSL, it is helpful for you to understand that the Hawai'i Innocence Project and the Beyond Guilt clinics are part of the University of Hawai'i WSRSL, and are not, never have been and never can be "law firms". As you are aware, the Hawai'i Rules of Professional Conduct (HRPC) Rule 1.0(d) defines a "law firm" as "a lawyer or lawyers in a professional business organization denotes a lawyer or lawyers in a professional business organization, see Rule 6 of the Rules of the Supreme Court of the State of Hawai'i, or lawyers employed in a legal services organization or the legal department of a corporation or other organization." Rule 6 of the Rules of Supreme Court of the State of Hawai'i (RSCH) provides:

> Rule 6. LAWYER'S PROFESSIONAL BUSINESS ORGANIZATIONS. (a) Compliance with this rule and applicable statutes. Any person or persons seeking to practice law as a corporation, a company, an association, in partnership, or in some other lawful organizational form (hereafter, lawyers' professional business organization) shall comply with the provisions of this Rule and of applicable statutes. (b) Name. Subject to any additional statutory restrictions or requirements, the name under which a lawyers' professional business organization practices law shall accord with the provisions of the Hawai'i Rules of Professional Conduct governing law firm names and shall also include the words "A Law Corporation, "A Limited Liability Law Company," "A Limited Liability Law Partnership," or other appropriate designation, whenever applicable.
> …
> (e) Directors. Notwithstanding any statutory provisions, each director of a lawyers' professional business organization shall be licensed to practice law in this state or any other state or territory of the United States or the District of Columbia. A lawyers' professional business organization that has only 1 shareholder need have only 1 director who shall be such shareholder.

William A. Harrison, Esq.
July 21, 2023
Page 4

Neither HIP nor Beyond Guilt fit within these definitions as outlined in the HRPC or the RSCH. Instead, HIP and Beyond Guilt are "clinical programs" as defined in RSCH Rule 7, Supervised Student Practice of Law. Specifically, the clinics are "a practice-oriented law activity administered under the direction of a faculty member of the University of Hawai'i School of Law, participation in which activity entitles qualified law students to receive academic credit." RSCH Rule 7.1(b). We further note that the **primary purpose of the clinics is an educational one**; specifically, to provide an experiential learning opportunity for the WSRSL students. To that end, the clinics are principally supported with taxpayer and student tuition and fees funds, neither of which should be used for the benefit of individual "clients" of a "firm."

### Supervision of Students by a Licensed Attorney

As I am sure you are also aware, WSRSL students must be supervised by a "supervising lawyer", which RSCU Rule 7.1(c) defines as "a member of the bar of this court who has been approved as a supervisor of law student interns by the University of Hawai'i School of Law." As you noted, Mr. Lawson is not licensed to practice law and as a result, cannot supervise the students' work on clinic matters. As a result, Associate Director Jennifer Brown was hired to perform the duties of the "supervising lawyer" for the HIP and Beyond Guilt students. If in fact clients of the Clinics are threatening to file complaints with the Office of Disciplinary Counsel, this is an issue of Ms. Brown's performance of her job duties, since as you note, Mr. Lawson is not licensed, and cannot and should not have been engaging in the unauthorized practice of law. It goes without saying that Ms. Brown has had continuous access to these files, and has also never complained or made anyone at WSRSL aware of the issues she and Mr. Lawson are having with the Clinics' clients.

Again, Mr. Lawson has had access to files, and has declined to request those files or even raise those concerns to Associate Dean Mirkay for appropriate action.

### Mr. Lawson's Conduct and Speech in Question Occurred at a Faculty Meeting

Turning now to your and FIRE's arguments regarding Mr. Lawson's free speech claims, first, as noted above, the allegations against Mr. Lawson are not simply regarding what he said but that his conduct during the meeting was alleged to be inappropriate, specifically that he made personal attacks against the Dean and other female faculty members and that he threatened other female faculty members. In reassigning Mr. Lawson to work from home, the University determined that his continuance was disruptive to his peers and WSRSL's operations. Moreover, in light of the fact that the incident occurred during a faculty meeting which Mr. Lawson attended in his capacity as

William A. Harrison, Esq.
July 21, 2023
Page 5

a WSRSL faculty member, we do not agree that the U.S. Supreme Court precedent would support your and FIRE's position.

As you know, the U.S. Supreme Court has held that, "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations...When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006). It further recognized that "[u]nderlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Id. at 420, 1959

It should also be noted that in *Garcetti*, the Court further stated:

> *Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. <u>The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.</u> If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. 547 U.S. at 418. (Emphasis added. Citations omitted)

Mr. Lawson appears to be arguing that he was speaking as a citizen on a matter of public concern, despite the fact that he was attending a faculty meeting. Based on the information currently known to us, we understand that the meeting was an internal WSRSL meeting that Mr. Lawson attended in his capacity as and in accordance with his duties as a faculty member, and that his allegedly violent behavior and offensive speech was directed at other faculty members and administration at WSRSL, not the public at large; the public is not invited to faculty meetings at WSRSL.

### Response to "Request" for Access to Files

Instead of making a simple request for access to files, the University receives threat of lawsuit and preliminary injunctions and letters from you (especially the letter dated July 10, 2023) and FIRE (also attached to ensure you have both the first FIRE letter and our response). One might reasonably conclude that Mr. Lawson believes that these tactics

William A. Harrison, Esq.
July 21, 2023
Page 6

will better his position somehow or affect the pending investigation or its outcome. We can assure you that no threats will change in any way the procedure or the outcome of the pending investigation.

Regarding his July 18, 2023 proposal to allow him to work in the WSRSL Clinic Building from 10 pm to 6:30 am every day, as an employer, the University cannot in good conscience permit a faculty member who also has teaching duties during the day to work these hours. However, as noted above, since Mr. Lawson is only restricted from going to the WSRSL's facilities during the pendency of the reassignment period and is permitted to go to other campus locations, the University will make an office space available on upper campus for Mr. Lawson. Dean Mirkay will work with Mr. Lawson to identify the files that he needs and have them moved to that location. Mr. Lawson will then be free to work out of that alternate location as he sees fit. As this may take a week or two to accomplish, Dean Mirkay will schedule a time for Mr. Lawson to access the clinic offices and identify the files that he needs immediately and take them or, if Mr. Lawson prefers and the documents are not voluminous, have a staff member immediately scan and provide them to Mr. Lawson electronically. Additionally, as Dean Mirkay has already discussed with Mr. Lawson, appropriate action will be taken with respect to the Clinics under Ms. Brown's supervision.

**Proposed Alternate Dispute Resolution**

We do appreciate your loyalty to WSRSL, and your desire to try to obtain a resolution. We do understand that the situation that occurred during the February 17, 2023 faculty meeting and the subsequent notice of investigation and reassignment to work from home has been upsetting for Mr. Lawson. However, as an employer, the University has an obligation to investigate and appropriately address the concerns that were raised by other employees, also very upset, and to do so in a manner that balances their rights and Mr. Lawson's rights.

With respect to your continued request to engage in an alternative dispute resolution to resolve the issue currently under investigation, as I previously discussed with you, the University needs to have a better understanding of what exactly you are proposing in order to engage the other faculty members, since without their participation any ADR efforts are unlikely to succeed. Additionally, I understand that there is a mediation being scheduled through the Hawai'i Civil Rights Commission for an unrelated matter involving the University and Mr. Lawson. The University is always willing to engage in efforts to mediate a resolution and would propose a mediation with attorneys only in mid-September 2023. Please let us know if you are interested in our proposal.

William A. Harrison, Esq.
July 21, 2023
Page 7

Finally, please note that the University's policies prohibit retaliation, which is defined as adverse treatment, intimidation, threats, coercion, or discrimination against individuals because they made an informal or formal complaint, or served as a witness, or participated in any manner in an investigation. Charges of retaliation may be investigated separately and, if deemed true, disciplinary action, up to and including discharge may occur.

Very truly yours,

Shelton G.W. Jim On
Associate General Counsel

Attachments